# UNITED STATES DISTRICT COURT

for the
Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Blackberry Cellular Phone, IMEI: 356966050585415, Model RFY111LW

)
)
)
)
)
)
)

Case No.

**FILED**

SEP 2 7 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

'16 MJ30 20

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A (incorporated herein)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of a Controlled Substance, Conspiracy |

The application is based on these facts:
See Affidavit of Adam Beckhelm (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Adam Beckhelm
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/27/16__

_____
*Judge's signature*

City and state: __San Diego, CA__

Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

1
2

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

3
4
5
6
7

IN THE MATTER OF THE SEARCH OF

Blackberry Cellular Phone, IMEI: 356966050585415, Model RFY111LW

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

8
9
10
11

I, Adam Beckhelm, Special Agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), having been duly sworn, state as follows:

12

## INTRODUCTION

13
14
15
16

1.      This affidavit is made in support of an application for a warrant to search :A Blackberry cellular phone, IMEI: 356966050585415, Model RFY111LW (hereinafter "Target Telephone") seized from Efrain MOTTA (hereinafter "MOTTA"), as more particularly described in Attachment A.

17
18
19
20
21
22
23
24
25

2.      Target Telephone was seized from MOTTA on or about September 9, 2016 at about the time of his arrest.  It is believed that Target Telephone was used by MOTTA to communicate with co-conspirators during a drug smuggling event on September 9, 2016. MOTTA has been charged with importation of 11.60 kilograms of methamphetamine in the Southern District of California.   Probable cause exists to believe that Target Telephone contains evidence relating to violations of Title 21, United States Code Sections 952 and 960.  Target Telephone is currently in the possession of the Department of Homeland Security, Homeland Security Investigations (HSI), Deputy Special Agent in Charge, located at 2255 Niels Bohr Ct. San Diego, California, 92154.

26
27
28

3.      Based on the information below, there is probable cause to believe that a search of Target Telephone will produce evidence of the aforementioned crimes, as described in Attachment B.

4.    This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers.  In preparation of this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within DEA, the United States Border Patrol, and the Department of Homeland Security.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 21, United States Code, Sections 952, and 960, described in Attachment B, is located on the cellular phone described in Attachment A.

## EXPERIENCE AND TRAINING

5.    I am a Special Agent and am currently employed with the Department of Homeland Security, HSI and have been a federal law enforcement officer since August 1995.  I was a United States Border Patrol Agent from 1995 to 2002.  I attended the Federal Law Enforcement Training Center ("FLETC") from August 1995 to December 1995, in relation to my employment as a United States Border Patrol Agent (USBP).  I again attended FLETC from May 2002 to August 2002, in relation to my current job title of Special Agent, where I have been since 2002.  During the course of my formalized training at FLETC, I learned the fundamentals of law enforcement. This included, but was not limited to, the gathering of evidence, preservation of a crime scene, and the use of electronic evidence, as well as recent training conducted by HSI.  These trainings were all in relation to violations of the United Sates Code.

6.    I am currently assigned to the HSI region known as Deputy Special Agent in Charge, San Ysidro, located in San Ysidro, California.  I work as a member of a narcotics group which primarily investigates violations of the United States Code that stem from the International border between the Republic of Mexico and the United States.  During this time, I have participated in the investigation of various Drug Trafficking Organizations (DTO's) involved in the acquisition, importation, transportation, and

distribution of controlled substances into and through the Southern District of California. Although the nature of my ongoing work with HSI requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, I regularly communicate with agents from the Homeland Security Investigations, Customs and Border Protection, and various other local law enforcement officers operating within the Southern District of California.

7.     By virtue of my employment as a Special Agent with HSI, I have performed various tasks, which include, but are not limited to:

    a.     Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    b.     Participating in the tracing of monies and assets gained by controlled substance traffickers from the illegal sale of controlled substances and/or the laundering of monetary instruments;

    c.     Interviewing witnesses, cooperating individuals, and informants involved in or with knowledge of the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

    d.     Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics and the laundering of monetary instruments.

8.     Through the course of my trainings, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular phones, tablets, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.   Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-

1  conspirators to receive instructions on how to cross and where and when to deliver the
2  controlled substance.

3  9.     In preparing this affidavit, I have conferred with other agents and law enforcement
4  personnel who are experienced in the area of narcotics investigations, and the opinions
5  stated below are shared by them.  Further, I have personal knowledge of the following
6  facts, or have had them related to me by persons mentioned in this affidavit.

7  10.    Based upon my training and experience as a Special Agent, and consultations with
8  law enforcement officers experienced in narcotics smuggling investigations, and all the
9  facts and opinions set forth in this affidavit, I submit the following:

10          a.  Drug smugglers will use cellular telephones because they are mobile and
11              they have instant access to telephone calls, text, web, and voice messages.

12          b.  Drug smugglers believe that cellular telephones provide greater insulation
13              and protection against court-ordered wiretaps, and they believe in the
14              inability of law enforcement personnel to simultaneously track the
15              originating and destination telephone numbers of calls placed to and from
16              their cellular telephones.

17          c.  Drug smugglers will use cellular telephones because they are able to actively
18              monitor the progress of their illegal cargo while the conveyance is in transit.

19          d.  Drug smugglers and their accomplices will use cellular telephones because
20              they can easily arrange and/or determine what time their illegal cargo will
21              arrive at predetermined locations.

22          e.  Drug smugglers will use cellular telephones to direct drivers to synchronize
23              an exact drop off and/or pick up time of their illegal cargo.

24          f.  Drug smugglers will use cellular telephones to notify or warn their
25              accomplices of law enforcement activity to include the presence and posture
26              of marked and unmarked units, as well as the operational status of Border
27              Patrol checkpoints.

28  //

4

## STATEMENT OF PROBABLE CAUSE

11.    On September 9, 2016, at approximately 1:30 a.m., MOTTA drove a 2004 Jeep Cherokee, bearing a California license plate, 5GMT237, to the San Ysidro Port of Entry, and applied for entry into the United States. One additional passenger was also in the car. A Customs and Border Protection ("CBP") Officer noticed fresh tool markings underneath the vehicle around the gas tank, and referred the car for secondary inspection.

12.    During the secondary inspection, Z-portal revealed anomalies in the spare tire in the trunk. A Narcotics and Human Detector Dog also alerted to that area. Upon further inspection, CBP officers cut open the tire and removed a total of 20 packages of a substance that field tested positive for methamphetamine. The packages weighed approximately 11.60 kilograms. A CBP officer then placed MOTTA under arrest.

13.    At the time of MOTTA's arrest, CBP officers seized Target Telephone from him as evidence. Another cellular phone was seized from the passenger in the car.

14.    Based upon my experience and investigation in this case, I believe that MOTTA, as well as other persons, was involved in an on-going conspiracy to import, transport, possess, and distribute methamphetamine throughout the State of California. Based on my experience investigating narcotics smugglers, I also believe that MOTTA used Target Telephone to coordinate with co-conspirators regarding the transportation and delivery of the methamphetamine and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, phone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of electronic devices described herein, which identify other persons involved in narcotics trafficking activities.

15.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the methamphetamine smuggling of MOTTA , and co-conspirators, such as phone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages,

5

pictures and other digital information are stored in the memory of the electronic devices described herein.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE CELLULAR TELEPHONE

16.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.     Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 21, United States Code, Sections 952 and 960 may be located on Target Telephone described in Attachment A.  I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Adam Beckhelm
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me
this 27th day of September, 2016

THE HONORABLE KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

A Blackberry cellular phone, IMEI: 356966050585415, Model RFY111LW seized from Efrain MOTTA on September 9, 2016 at the San Ysidro, California, Port of Entry. It is currently in the possession of the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Special Agent in Charge, San Diego California, 92101.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The following evidence to be searched for and seized pertains to violations of Title 21, United States Code, Sections 952, 960, and 963:

1.   Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a.   tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    b.   tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to smuggle narcotics from Mexico to the United States and within the United States;

    c.   tending to identify co-conspirators, criminal associates, or others involved in smuggling narcotics from Mexico to the United States and within the United States;

    d.   tending to identify travel to or presence at locations involved in the smuggling of narcotics from Mexico to the United States and within the United States, such as stash houses, load houses, or delivery points.

    e.   tending to identify the user of, or persons with control over or access to, the subject phones; or

    f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.